UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VICKIE PHAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PEAK DEBT CONSUMPTION, LLC, et al.,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:19-CV-04613-JPB |

## ORDER

This matter is before the Court on Vickie Phan and Kay Kalantari's (collectively, "Plaintiffs") Motion for Entry of Judgment by Default [Doc. 102]. This Court finds as follows:

## PROCEDURAL HISTORY

On October 15, 2019, Plaintiff Phan, on behalf of herself and others similarly situated, filed suit against seven different defendants. [Doc. 1]. On January 30, 2020, after several of the defendants moved for dismissal, Plaintiff Phan filed a First Amended Complaint in Class Action for Damages ("First Amended Complaint"). [Doc. 25]. The First Amended Complaint was brought against five defendants. Id.

On August 10, 2020, Plaintiff Kalantari was added as a party. The same day, Plaintiffs filed their Second Amended Complaint in Class Action for Damages ("Second Amended Complaint"). [Doc. 58]. The Second Amended Complaint asserts claims against Peak Debt Consumption, LLC ("Peak"), Chris McCormick, Fisher Law Group, PLLC, ("Fisher Law") and David Fisher. Id.

On January 8, 2021, pursuant to this Court's direction, the Clerk entered default against Peak, McCormick and Fisher Law (collectively, "Defendants"). See January 8, 2021 Docket Entry and April 28, 2021 Docket Entry. Thereafter, on April 6, 2021, Plaintiffs filed the instant Motion for Entry of Judgment by Default against Defendants. [Doc. 102]. The motion is now ripe for review.

## LEGAL STANDARD

When a defendant fails to file an answer or otherwise defend, a court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). Default judgments are typically disfavored. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Id. at 1245 (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). In other words, "[t]he court may grant default judgment [only] on those claims brought by [the] [p]laintiff that are legally sufficient and supported by well-pleaded

allegations." Earthlink, Inc. v. Log On Am., Inc., No. 1:02-cv-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006); see also Functional Prod. Trading, S.A. v. JITC, LLC, No. 1:12-cv-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014) ("[I]n considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint," and "a default judgment cannot stand on a complaint that fails to state a claim."). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim," and the Court must determine "whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Surtain, 789 F.3d at 1244–45 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## DISCUSSION

Plaintiffs' Second Amended Complaint asserts claims under the Credit Repair Organizations Act ("CROA"), the Georgia Debt Adjustment Act ("GDAA") and the Georgia Fair Business Practices Act ("Georgia FBPA"). Before analyzing whether Plaintiffs state a claim pursuant to each of the statutes, it is important to acknowledge that Plaintiffs' Second Amended Complaint demonstrates some of the common characteristics of a shotgun pleading.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," which violate the requirement of Rule 8 of the Federal Rules of Civil Procedure that a complaint contain a short and plain statement of the claim. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018). The Eleventh Circuit Court of Appeals has explained that shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Arrington v. Green, 757 F. App'x 796, 797 (11th Cir. 2018). Shotgun pleadings,

> whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are "standing in line," waiting for their cases to be heard. The courts of appeals and the litigants appearing before them suffer as well.

Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1356–57 (11th Cir. 2018). It has been said that tolerating shotgun pleadings "constitutes toleration of obstruction of justice." Id. at 1357.

Typically, shotgun pleadings are characterized by any one of the following: (1) multiple counts that each adopt the allegations of the preceding counts; (2) conclusory, vague and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action into distinct counts; or

4

(4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act or against which of the defendants the claim is brought.  McDonough v. City of Homestead, 771 F. App'x 952, 955 (11th Cir. 2019).  These categories "do not have precise and clearly marked boundaries." Tran v. City of Holmes Beach, 817 F. App'x 911, 913 (11th Cir. 2020).  Rather, the "unifying characteristic" of all shotgun pleadings is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015).

Plaintiffs' Second Amended Complaint contains vague and immaterial facts not clearly connected to a particular cause of action.  In this case, Plaintiffs' pleading spans ninety-nine pages with most of the factual allegations laid out in the first twenty-four pages.  Where Plaintiffs assert their causes of actions (which are not numbered and not clearly set forth in distinct counts), those portions of the pleading are virtually void of factual allegations or factual enhancement.  Instead, where the causes of action are asserted, Plaintiffs only set forth the statutory language.  This manner of pleading requires the Court to sift through the lengthy factual section to determine which facts could possibly apply to which cause of action.

To avoid an impermissible shotgun pleading, Plaintiffs' Second Amended Complaint should have had a separate section for each cause of action that set forth in individually numbered paragraphs the legal elements of the cause of action *and* the relevant facts showing an entitlement to relief for such cause of action. In other words, Plaintiffs should have alleged factual support for every cause of action asserted and, more specifically, for each element of the cause of action. In the pleading's current form, most of the causes of action only state the elements of the offense with no factual allegations that correspond to those elements.

Plaintiffs' Second Amended Complaint also combines multiple claims against multiple defendants without specifying which defendant is responsible for which act or against which of the defendants the claim is brought. Upon review of the Second Amended Complaint, it is unclear whether each cause of action is brought against each defendant or whether each cause of action only applies to some defendants. Where a plaintiff brings claims against multiple defendants, "the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what plaintiff is claiming." J.V. v. Duval Cnty. Sch. Bd., No. 3:16-cv-1009, 2017 WL 4226590, at *1 (M.D. Fla. Sept. 22, 2017).

Because Plaintiffs' Second Amended Complaint contains vague and immaterial facts not clearly connected to a particular cause of action and combines multiple claims against multiple defendants without specifying which defendant is responsible for which act or against which of the defendants the claim is brought, default judgment is inappropriate. The Court will nevertheless more specifically analyze each of Plaintiffs' causes of action.

1. Credit Repair Organizations Act

This Court will first analyze whether Plaintiffs state a claim under the CROA. The CROA "regulates the practices of credit repair organizations." CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012). As defined by the CROA, "credit repair organizations" include:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A).

The CROA prohibits a credit repair organization from charging or receiving "any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before

7

such service is fully performed." Id. § 1679b(b).  The CROA also prohibits any person from making "any untrue or misleading representation of the services of the credit repair organization." Id. § 1679b(a)(3).

In their Second Amended Complaint, Plaintiffs allege generally that Defendants are credit repair organizations.  It seems that Plaintiffs assert violations of § 1679b(a)(3) and § 1679b(b).  As to § 1679b(a)(3), Plaintiffs provide the statutory language and then allege that "HGI, Peak Debt, and Fisher repeatedly made untrue and misleading representations to Plaintiffs by informing them that Peak Debt and Fisher would settle their debts with their creditors, but instead Peak Debt and Fisher lined their pockets with Plaintiffs' money while doing little or nothing to truly assist Plaintiffs." [Doc. 58, p. 26].  This Court finds that this allegation is insufficient to state a claim as it is vague and ambiguous.  At a minimum, the Second Amended Complaint should have identified precisely what untrue or misleading statements were made.  The Second Amended Complaint also should have identified which defendant made the statements.  As to § 1679b(b), Plaintiffs' Second Amended Complaint does nothing more than provide the statutory text.  Plaintiffs must allege more than statutory language to state a claim to relief.

At bottom, this Court finds that Plaintiffs have not stated a claim under the CROA, and therefore they are not entitled to a default judgment. To the extent Plaintiffs seek default as to this cause of action, the motion is **DENIED**.

2. The Georgia Debt Adjustment Act

Plaintiffs have also asserted a claim pursuant to the GDAA. The GDAA provides that:

> [i]n the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor; provided, however, no provision of this chapter shall prohibit any person, in the course of engaging in debt adjusting, from imposing upon a debtor who resides in this state a reasonable and separate charge or fee for insufficient funds transactions.

O.C.G.A. § 18-5-2. Debt adjusting is defined as "doing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts." Id. § 18-5-1(1). Under the statute, "[a]ny person engaged in debt adjusting shall disburse to the appropriate creditors all funds received from a debtor, less any fees authorized by this chapter, within 30 days of receipt of such funds." Id. § 18-5-3.2.

9

In their Second Amended Complaint, Plaintiffs allege that Defendants provided debt adjusting services to Plaintiffs while Plaintiffs resided in Georgia. Plaintiffs also allege that Defendants collected in excess of 7.5% of the amount Plaintiffs paid monthly for distribution to Plaintiffs' creditors. Finally, Plaintiffs allege that Defendants retained Plaintiffs' money for the payment of the creditors for more than thirty days.

This Court finds that Plaintiffs have failed to state a claim for a violation of the GDAA because Plaintiffs have merely set forth a formulaic recitation of the elements of the cause of action. By way of example, Plaintiffs allege that Defendants collected an amount in excess of 7.5%. While this is an element that must be pled and Plaintiffs parrot the statutory language, the allegation must be supported by further factual enhancement. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Regarding this particular allegation, to support their assertion that Defendants collected an amount in excess of 7.5%, Plaintiffs should have alleged how much they paid each month and how much was retained by Defendants.

In sum, this Court finds that Plaintiffs have not stated a claim under the GDAA, and therefore they are not entitled to a default judgment. To the extent Plaintiffs seek default as to this cause of action, the motion is **DENIED**.

3. <u>Georgia Fair Business Practices Act</u>

Plaintiffs also bring a claim pursuant to the Georgia FBPA. In their Second Amended Complaint, Plaintiffs allege that because Defendants violated the GDAA, they also violated the Georgia FBPA. Plaintiffs further allege that the violation was intentional.

O.C.G.A. § 18-5-4(d) provides that a violation of the GDAA "shall additionally be a violation of" the Georgia FBPA. As explained previously, Plaintiffs failed to allege sufficient factual support to state a claim under the GDAA. Because Plaintiffs failed to state a claim under the GDAA, Plaintiffs have likewise failed to state a claim under the Georgia FBPA. As a result, to the extent Plaintiffs seek default as to the claim brought pursuant to the Georgia FBPA, Plaintiffs' motion is **DENIED**.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Entry of Judgment by Default [Doc. 102] is **DENIED**. Plaintiffs are granted leave to file a third amended complaint to cure the deficiencies discussed herein. The third amended

complaint shall be filed no later than February 1, 2022. If a third amended complaint is filed, Plaintiffs must properly serve it in accordance with the Federal Rules of Civil Procedure no later than February 22, 2022.

Plaintiffs are notified that a failure to comply with this Order may result in dismissal of the case. The Clerk is **DIRECTED** to resubmit this matter after the applicable time period in the event a third amended complaint is not filed.

**SO ORDERED** this 25th day of January, 2022.

_____
J. P. BOULEE
United States District Judge